# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LARRY D. CONLEY, now known as
JOSHUA SUPREME,**
        **Plaintiff,**

     v.                                                       **Case No. 10-C-00250**

**BRIAN OTZELBERGER, et al.,**
        **Defendants.**

## DECISION AND ORDER

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis on a claim that defendants violated his Fourth Amendment rights on March 25, 2008 by stopping his vehicle without probable cause or reasonable suspicion, pointing a gun at him, grabbing him from his vehicle, and handcuffing and searching him. The parties have filed cross motions for summary judgment.

Plaintiff also filed two discovery motions to compel defendants to produce documents and respond to a second set of interrogatories. Defendants oppose these motions to compel, maintaining that plaintiff did not respond to their offer to produce requested documents, and that plaintiff's second set of interrogatories was untimely. I will deny the motions to compel discovery because plaintiff failed to certify good faith attempts to confer regarding the discovery at issue, as required by Civil L. R. 37 (E.D. Wis. 2010) and Federal Rule of Civil Procedure 37(a)(1), and because plaintiff has not established that he is entitled to the discovery he seeks.

# I. BACKGROUND[1]

On Tuesday, March 25, 2008, Milwaukee Police Detectives Brian Otzelberger and Michael Alles overheard a confidential informant ("C.I.") place a phone call in their presence to order approximately $200 worth of crack cocaine to be shortly delivered to the Red Roof Inn at 6360 South 13th Street in Oak Creek, Wisconsin. The informant identified the drug dealing suspect as "D.P." and described him as a black male, 40–45 years old, 5'08"–5'11" tall, 175–190 lbs, medium complexion, wearing glasses. The informant stated D.P. would be driving a White Ford Explorer-type SUV. The informant stated D.P. could have a white female subject with him by the name of Kayla. The informant stated D.P. likes to conceal the drugs inside an M&M's candy bag.

Detectives Otzelberger and Alles thereafter observed a vehicle, which was a white Mercury Mountaineer with brown markings, traveling westbound on West College Avenue in the 1100 block towards South 13th Street. The C.I. identified that vehicle as the suspect's vehicle.[2] The vehicle had two occupants, a black male driver and a white female passenger. The vehicle turned south onto South13th Street and proceeded in the direction of the Red Roof Inn. The vehicle then turned into the driveway of the motel and drove to the south end of the motel.

---

[1] Facts are taken from Defendants' and Plaintiff's Proposed Findings of Fact, the responses thereto, and the affidavits of plaintiff and defendants.

[2] The natural interpretation of this language, which appears in defendants' proposed findings of fact and the affidavit of Detective Alles, is that the C.I. saw the vehicle and confirmed that it was the vehicle he had described earlier. However, the affidavit does not specifically state whether the C.I. pointed out the vehicle to the detectives as they were observing it, or whether the vehicle was merely similar to the description that the C.I. had provided earlier.

2

Supporting officers, the other defendants in this case, were given the signal by Detectives Otzelberger and Alles to stop the vehicle. In the parking lot to the rear of the motel, Police Officer Robert Garcia pulled out directly in front of the vehicle, and exited his squad car with his service pistol in his hand while yelling, "Police" and "Stop." Defendants maintain that plaintiff then put his vehicle in reverse, gunned the engine, and came within inches of ramming the marked squad vehicle of Officers Thiel and Baranowski, who had driven up from behind while Garcia returned to his squad car. Plaintiff denies placing his vehicle in reverse, gunning the engine, or coming within inches of Officers Thiel and Baranowski's marked squad car. He maintains that he stopped his vehicle before other officers arrived and that they parked 30 feet away from his vehicle. Plaintiff further states that Officer Garcia did not get back in his unmarked vehicle, but rather ran to plaintiff's vehicle with his weapon pointed at him.

Garcia approached plaintiff's vehicle while pointing his pistol at plaintiff, and repeatedly demanded that plaintiff show the officer his hands. Defendants maintain that plaintiff did not immediately comply, but plaintiff asserts that he feared for his life, complied with the officers, and was grabbed from his vehicle as he unlocked the doors.

Garcia opened plaintiff's door, grabbed him from his vehicle, and pushed him to the ground. Garcia placed his knee on plaintiff's back and handcuffs were applied. Plaintiff was held on the ground and searched. Plaintiff and defendants disagree regarding whether Officer Garcia also grabbed plaintiff's neck, whether plaintiff was held on the ground for up to 15 minutes, and whether plaintiff consented to the search. During the search, plaintiff's body was forcibly twisted and turned and his shoes and socks were removed. The black male driver was identified as plaintiff Larry D. Conley and the passenger as Kayla M.

3

Peterson, a white female. Detective Otzelberger conducted a field interview with Kayla and asked if she had any drugs on her. Kayla stated she had a rock inside her bra. At that point an M&M's candy bag dropped to the ground. Detective Otzelberger recovered the bag and looked inside and observed a clear plastic bag containing 30 corner cuts of crack cocaine. A search of plaintiff revealed money inside his socks and pants pocket totaling $790.00 dollars. Police Officer Diane Arenas conducted a custodial search of Kayla and revealed one corner cut of crack cocaine inside of her bra. Detective Bishop also had his canine "Kenobie" run by the vehicle. Kenobie alerted to the console area of the vehicle. The substance from the M&M's bag tested positive for cocaine base, weighing 8.60 grams without packaging.

## II. DISCUSSION

In support of summary judgment, plaintiff contends that defendants acted unreasonably in seizing him, because it is unreasonable to point a gun at a person and push and shove him when he presents no danger. Defendants, on the other hand, submit that they had probable cause to arrest plaintiff when he was seized, that excessive force was not used during the seizure, and that they are entitled to qualified immunity because they did not violate any clearly established constitutional or statutory rights of plaintiff.

### A. Unreasonable Seizure

Plaintiff is proceeding on a claim that he was unreasonably seized in violation of the Fourth Amendment. Defendants acknowledge that plaintiff was seized when Officer Garcia pointed a gun at plaintiff and pulled him from his vehicle in the parking lot of the Red Roof Inn. In order to prevail on this type of claim, plaintiff must establish that "the arresting

4

officer lacked probable cause to make the arrest." Gonzalez v. Village of West Milwaukee, No. 10-2356, 2012 WL 313572, at *4 (7th Cir. Feb. 14, 2012). "An officer has probable cause to arrest if he has reason to believe, in light of the facts known at the time, that the suspect has committed or is about to commit a crime." Id. Furthermore, an officer is protected by qualified immunity if "there was arguable probable cause for an arrest," which "exists when a reasonable officer could mistakenly have believed that he had probable cause to make the arrest." McComas v. Brickley, No. 11-2138, 2012 WL 807145, at *3, *5 (7th Cir. Mar. 13, 2012).

The Court of Appeals for the Seventh Circuit has held that, although an informant had not worked with the police before and got some details wrong, such as stating that the suspect weighed about 260 pounds and would be driving a red Dodge truck, when he actually drove a red Ford truck and weighed only about 200 pounds, officers had probable cause to arrest a drug dealer based the informant's phone conversation with the dealer:

> They listened in on her phone call with Clark and heard her place an order for a significant amount of cocaine to be delivered to her home by Clark himself in two days' time; two days later, Clark showed up on her doorstep just as he had promised. When Clark pulled his pickup into McCormick's driveway, the police had probable cause to believe that he was fulfilling his end of that bargain; in other words, they had probable cause to believe that he was dropping off the order of cocaine.

United States v. Clark, 657 F.3d 578, 582 (7th Cir. 2011). Accordingly, construing all facts in favor of plaintiff and assuming that plaintiff did not try to evade the officers in any way and that the informant failed to provide police with the correct model and distinguishing markings of the vehicle driven by plaintiff, a reasonable officer could still believe that the general vehicle description of a white Ford SUV, physical description, and time and location communicated for the drug delivery were adequate to justify the arrest, especially

5

because the defendants partially corroborated the planned transaction by listening to their informant's phone call to plaintiff. Defendants are therefore entitled to summary judgment on the claim that they unreasonably seized plaintiff.

### B. Excessive Force During Seizure

Plaintiff also maintains that Officer Garcia used excessive force during the seizure by pointing a gun at his head, grabbing him from his vehicle, pushing and shoving him to the ground, kneeling on his back, and gripping his neck tightly and holding his face pressed to the ground. The use of excessive force during an otherwise lawful arrest violates the Fourth Amendment, but "[t]he right to make an arrest necessarily carries with it the right to some degree of physical coercion to effect it." Sow v. Fortville Police Dep't., 636 F.3d 293, 304 (7th Cir. 2011). Furthermore, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Graham v. Connor, 490 U.S. 386, 386 (1989)). Rather, "the 'reasonableness' of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 303.

Plaintiff cites the case of Baird v. Renberger, 576 F. 3d 340 (7th Cir. 2009) for the proposition that it is clearly unreasonable for a police officer to push and shove cooperative individuals, or to detain them at gunpoint in a nonthreatening situation. Evaluating all facts in the light most favorable to the plaintiff, I must accept plaintiff's contention that he was cooperative with the officers, that he did not place his vehicle in reverse, and that he was unlocking his vehicle's doors when Officer Garcia pulled him from his vehicle at gunpoint. Nonetheless, this case differs substantially from Baird, in which an officer used a 9-

6

millimeter submachine gun to round up everyone in the area of an industrial park and detain them for two hours while he searched for evidence of the possible alteration of a vehicle identification number (VIN). In finding that the officer acted unreasonably by detaining innocent, compliant individuals by aiming a submachine gun at them to investigate a suspected VIN alteration, the Court of Appeals for the Seventh Circuit noted that the situation was "a far cry from crimes that contain the use of force as an element, crimes involving possession of illegal weapons, or drug crimes, all of which are associated with violence." Id. at 344. Unlike the officers in Baird, who were investigating the possibility of a minor property crime, defendants in this case were interrupting a confirmed delivery of crack cocaine by arresting the drug dealer, who was behind the wheel of a SUV. While I note that the association of violence with crack cocaine trafficking has often been overstated,[3] defendants were undisputedly confronted with a potentially volatile and dangerous situation when they arrested plaintiff.

Plaintiff does not describe any physical injuries resulting from the use of force, but he suffered pain and bruising as well as psychological and emotional anguish. Assuming that plaintiff was complying with orders and preparing to exit his SUV, the force used may have been somewhat disproportionate, as the search yielded $790 in cash and 30 corner cuts of cocaine, but apparently no gun on plaintiff or in his vehicle. However, defendants could not know whether or not the dealer they were arresting was armed or unarmed, or

---

[3] "[S]ignificantly less systemic violence . . . is associated with crack cocaine trafficking than was reported earlier." United States v. Smith, 359 F. Supp.2d 771, 789 (E.D. Wis. 2005) (quoting statement of the Sentencing Commission calling into question the basis for then existing 100:1 sentencing ratio for crack cocaine vs. powder cocaine offenses).

whether he might attempt to use his SUV to escape or as a weapon. Plaintiff does not identify any cases clearly establishing that it is unreasonable for police officers to point a gun at an individual when making a probable cause arrest for delivering drugs, or to physically remove the arrestee from his vehicle and hold him on the ground. Under the circumstances, defendants are entitled to qualified immunity for their use of force in removing plaintiff from his vehicle and arresting him. Plaintiff also complains of the manner in which his shoes and socks were removed, but there is nothing unreasonable about this search incident to arrest, which revealed $790.00 in plaintiff's pockets and socks.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motions for production of documents [DOCKET #59], to compel [DOCKET #68], and for summary judgment [DOCKET #69] are **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [DOCKET #73] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 19th day of March 2012.

                                                                 s/_____
                                                                  LYNN ADELMAN
                                                                  District Judge